**UNTITED STATES DISTRICT COURT FOR**

**THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| ANDRE MARIE NGONO, ) | |
| Plaintiff, ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| LUC OWONO, KAMARA YOUSSOUF, ) | |
| AFRICA EMPLOYMENT AGENCY, ) | **CASE NO.: 21-cv-00095-(PGG)-(SN)** |
| LUCKENDY REALTY, ) | |
| TRAVSAIL AGENCY, INC., ) | |
| SABLE HUB INC., ) | |
| ACCESS TRANSPORTATION ) | |
| SERVIVES INC., ) | |
| Defendants, ) | |

_____)

# SECOND AMENDED COMPLAINT

1

# I. INTRODUCTION

1.Plaintiff Andre Marie Ngono proceeding Pro se, I now bring this Civil action against Luc Owono, and all other Defendants listed above. I bring this civil action against the Defendants because they subjected me the Plaintiff to severe form of trafficking in person as related to labor and sex trafficking.

2. In this legal action, I seek to recover compensatory, punitive, and pecuniary money damages for the Defendants' wrongful acts in which they caused serious injuries to Plaintiff. The Defendants subjected Plaintiff to severe form of trafficking in person. They also conspired and attempted to subject Plaintiff's then 7 years old daughter to sex trafficking. In addition, I seek to recover money damages for all injuries sustained by Plaintiff as a direct or proximate cause of Plaintiff's injuries.

# II. THE PARTIES

## A. PLAINTIFF

3. Andre Marie Ngono, I am the Plaintiff in this Civil action. The Defendants collectively subjected me to labor trafficking. They further conspired and attempted to subject my then 7 years old daughter to sex trafficking. I currently reside in New York city where the acts of severe form of trafficking in person occurred.

## B. DEFENDANTS

4. Luc Owono previously known as Luc Ndi Owono, but has changed his name to Luc Owono, is a defendant in this legal action. Luc Owono is, or was active member of AEA. He was my direct supervisor during my victimization where the Defendants held Plaintiff in debt bondage, peonage, slavery, and involuntary servitude. Luc Owono resides in New York.

5. Kamara Youssouf is a Defendant in this case. He is, or was the general manager of AEA New York's chapter which subjected Plaintiff to severe form of trafficking in person. Kamara Youssouf resides in New York.

6. Africa Employment Agency (AEA) is an international criminal enterprise based in Africa. This criminal organization specializes in sex and labor trafficking. AEA is a defendant here as a foreign entity and its agents in the New York City area are known to be Luc Owono, and Kamara Youssouf. Thus, of the pleadings to any of AEA's agent shall be deemed service to AEA within the jurisdiction of the Southern District Court or New York.

7. Luckendy Realty is or was a domestic real estate shell company opened by Africa Employment Agency with the use of Luc Ndi Owono Conditional green card and the related social security. Luckendy Realty was used in connection to the acts of severe form of trafficking in person that Plaintiff has been the victim. Luckendy Realty is or was a shell company based in New York.

8. Travsail Agency, Inc., is connected to Africa Employment Agency and is, or was "daughter company" of Africa Employment Agency. It was also used by Luc Owono as an instrument of fraud to lure Plaintiff into additional severe form of trafficking in person. Travsail Agency, Inc., is, or was based in New York.

9. Access Transportation Services, Inc., with office at 75 Virginia Road White Plains, New York 10603 and 235 Lexington Avenue, White Plains, New York 10606, both offices utilize the same telephone number (914) 207- 0799 and have direct connection to Africa Employment Agency and are or were "daughters-companies" of Africa Employment Agency. Access Transportation companies listed above is or was based in New York.

10. Sable Hub, Inc., has connection to Africa Employment Agency and like its sister Access Transportation Services Inc., named above, Sable Hub Inc., utilizes the same address as its "sister"

shell company's office at 75 Virginia Road White Plains, New York 10603. Sable Hub Inc., is or was based in New York.

### III.     JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the Alien Tort Claim Act (ATCA)., the Trafficking Victim Private Right of Action (TVPRA)., 18 USC § 1595 (2004)., the Trafficking Victim Protection Act (TVPA)., and pursuant to 28 USC § 1331; 28 USC § 1367.

12.    Venue is proper in this Court pursuant to 28 USC § 1391.

### IV.     BACKGROUND OF THE FACTS

13.  In December 2006, I was recruited in Gabon by Africa Employment Agency (AEA). The Agency's associates recruited me in Africa, caused me to be transported from Africa to the United States, harbored me in New York and obtained my labor and services through use of fraud, coercion. All of these unlawful acts were done for the purpose of subjecting Plaintiff to involuntary servitude, peonage, debt bondage and slavery for about 14 years from December 2006 to November 2020.

14. In addition to the acts of labor trafficking mentioned above, AEA, and its New York agents, namely Luc Owono and Kamara Youssouf conspired in the year 2007 to subject my then 7 years old daughter to sex trafficking. The Defendants in fact attempted to commit sex trafficking in which commercial sex was to be induced to my 7 years old daughter, and the defendant did have the intent to compel my infant child to perform sex acts with their pedophile clients while my child had not attained 18 years of age.

15. The Defendants recruited me in Africa under the term that I was to come to the United States of America to work for the Agency under its "daughter- companies" for five years in order to liquidate my debt bondage of $50,000.00. This amount of money accounted for the cost of my

4

U.S. visa, my travel expenses, fees, protection in the United States, and for my shelter for the five years of debt bondage, peonage, slavery, and involuntary servitude.

16. In addition to the 5 years debt bondage, peonage, involuntary servitude and slavery, Africa Employment Agency, its "daughter-companies" through and by its New York agents (Luc Owono and Kamara Youssouf), was to help me obtain legal status in the United States through fraudulent marriage with a U.S. Citizen woman. The fraudulent marriage was going to allow me to obtain a green card through marriage, and all costs and fees for the marriage and green card 's application were to be paid by AEA and or its New York's agents. However, the potential green card that I was to obtain came with the conditions that AEA was to use such green card for another five 5 years in addition to the five years trafficking labor and as a continuation of debt bondage, peonage, involuntary servitude, and slavery that I was subjected to, by the Defendants.

V.   **NARRATIVE OF THE INCIDENT**

17. On December 7, 2006, I arrived at JFK Airport from Africa after being recruited by AEA. From Africa, AEA 's associates in Africa gave me directives that my daughter and I were to be picked up by one of the AEA New York's agent ( Luc Owono or Kamara Youssouf ) upon arrival at JFK airport. As planned, we were picked up by Kamara Youssouf at JFK and he drove us in a white VAN to a trafficking house located in the Bronx at 585 E 152 nd Street, Bronx, New York 10455.

18. The next day, Kamara Youssouf placed me under direct supervision of Luc Owono who was acting in his official capacity as AEA's representative. Kamara and Luc Owono made me work as house helper and as security guard in various places in New York city, and for their own and AEA profit. When I arrived in the United States of America, I did not have a social security and I had no idea what a social security was, nor did I know what the purpose of a social security was, as we do not have such document in Cameroon or in Gabon. So, I had no social security and no work authorization. When coming to the United States to work, my understanding of work was based on my knowledge of labor practices in Cameroon or Gabon. In the forementioned African countries, employees are verbally hired or fired in most unskilled labor's positions. No social

security or work authorization is required, and employees are paid monthly under verbal contract.  But AEA's agents who were familiar with the United States labor' system knew exactly what to do. Luc Owono acting on his own and on the behalf of AEA used his own documents to make me work under his documents as to maximize profit.

19. As a person held in debt bondage, peonage slavery and subjected to involuntary servitude, I was required to turn over my passport to prevent my escape. Once in New York, Luc Owono acting on his own and on the behalf of AEA, requested that I turn my passport over to him and I did, as requested by Luc Owono.  I followed the orders given to me by the Defendants ( Luc Owono, Kamara Youssouf and AEA). After turning over my passport, Luc Owono explained to me that their practices of slave labor require the laborer to perform under the name of the laborer's owner or representative. Luc Owono and Kamara Youssouf after a brief discussion, decided that my slave labor's name should be Luc Ndi owno instead of Kamara Youssouf. Luc Owono then explained to me that people like me who are held in debt bondage or slavery worked not under their own name, but under the name of their master or representative as to ensure that all proceeds of the labor were accounted for. I then started working under my new  slave labor's mane and their clients where they assigned me to work did pay them by checks. The checks were issued under the name of Luc Ndi Owono and were then deposited in Luc Ndi Owono's bank account before being transferred to AEA's banks in Africa.

20. I requested during my criminal trial that the prosecution traced back the checks that were issued for my labor and deposited in Luc ndi owono bank account, But the prosecution was never interested in uncovering the truth. Rather, the prosecutor was more interested in his personal success and his percentage rate of conviction than he was interested in justice. In fact, I reminded the prosecutor in my opening statement of his role as a public servant, whose objective in any case is never that he or she shall win the case. That, the only objective for a prosecutor in any case is that justice be served irrespective of the verdict. See My opening statement in case 16-cr-00367-DAB.

21. By making me work under Luc Ndi owono's conditional and temporary green card and work authorization, Luc Owono and Kamara Youssouf were able to maximize profit. I produced on average $1200.00 per month compared to $840.00 per month that was the standard monthly revenue for the master of a slave working off the book, and not performing under the master's documents in the United States. By this lucrative method of performing work under the master's documents, I produced more than $72,000.00 in five years which was more than the original $50,000.00 debt bondage.

22. At the end of the first five years of my debt bondage, slavery, peonage, and involuntary servitude, AEA New York's agents helped me get married. Luc Owono and Kamara Youssouf gave me $1,000.00 to pay for the green card application's fees. But the condition that the Defendants were to use my potential green card to turn me into active member of the sex and labor trafficking business displeased me, so I turned down the offer, but I kept the $1,000.00 which I later donated to the woman to whom I was married. So, I did not get the green card through fraudulent marriage as Luc Owono and all other AEA's agents and victims have done before me.

23. At the time I arrived, Luc Owono who came to America before me, and obtained a green card through marriage, was on a two-year conditional green card. At that same time, Luc Owono's wife wanted to divorce him. Inter alia, she had found a subsidized house in Connecticut which had low-income requirement. But Luc Owono and I (me as AEA's laborer) were both working under the same two years temporary and conditional green card, work authorization and the related social security. My slave labor's revenue was registered under Luc's and so raised the household income for Luc's wife, since they were married. So, Luc's wife faced serious burden in her marital status of that specific time which had her as legally married and required her to declare the entire household income as required in subsidized housing rental programs. Her best way out of the situation was to divorce Luc Owono.

24. Luc Owono for his part could not allow the divorce to happen at this time because he was on a two-year conditional green card and a divorce at this specific time would have ruined

all his chance of becoming a Legal Permanent Resident (LPR) and for that matter transitioning to becoming a U.S. Citizen that he has now become. With his goal of becoming a U.S. Citizen, Luc Owono first needed to avoid a divorce within the conditional period. I should note here that the United State Citizenship and Immigration Services has purposefully established the two years conditional green card period to deter fraudulent marriages by foreigners in the United States. Luc Owono has successfully evaded this period despite his fraudulent marriage which ended by divorce as soon as Luc Owono secured his legal permanent status in the United States.

25. As Luc's wife was in the process of initiating the divorce, Luc Owono manipulatively coerced her to enter into an agreement in which Luc Owono was to pay her $1500.00 per month until he became a Legal Permanent Resident without condition whatsoever. Luc Owono and his wife agreed that the divorce was to be filed only after Luc Owono physically received the green card, and that it was Luc Owono who was to pay for the divorce's proceeding costs and fees.

26. As soon as Luc Owono received his LPR status through the agreement with his wife, he immediately filed for divorce as planned. The divorce was granted by default because the wife knew not to respond to the divorce petition as to facilitate the divorce agreed upon by both parties ( Luc Owono and his ex-wife).

27. Luc Owono incurred serious debt in paying $1500.00 per month to his wife to evade the statutory period and to secure legal permanent status in the United States. So, Luc Owono needed a source of additional income to pay off the enormous debt. He then designed the next scheme to further subject me to severe form of trafficking in person. Luc Owono knew that I did not have legal status and that my $50,000.00 debt bondage was liquidated. So, he offered me two options. One option was that I could continue to work under his document as I did for my first five years debt bondage, but I was to receive 20% of the revenue of my labor since the documents belonged to him. I was to receive 20% of each paycheck, but the entire paycheck was to be deposited in his personal bank account as previously done during my $50,000.00 debt bondage under AEA. I did not have a bank account and I could not cash a check without state or Federal Identification card. The second option was that he could put me to college using his

documents as with the labor trafficking. Luc Owono told me that if I were to take the second option, he was to appoint me as a general manager in one of the AEA's Trafficking company once I graduated from college. The company in question is a travel agency called TRAVSAIL AGENCY INC., that is still in operation in The State of New York as of the date of this complaint.

28. I took the second option since it offered me a prospect of hope. But I had no idea of the true intention of Luc Owono for the second option. I Later learned after the facts that the real purpose of the second option was for Luc to obtain money from the Department of Education. Luc Owono enrolled me to college and began to collect student loans to pay off the enormous debt that he incurred in paying $1500.00 per month to his estrange wife. While he was collecting student loans, he lied to the Department of Education that some unknown person was going to school and taking loans by using his personal identification. From the first year, the Department of Education began to cancel the student loans with the lies that Luc Owono was a victim of identity theft. Luc Owono successfully cancelled all loans that he fraudulently obtained from the Department of Education and other agencies by falsely and fictitiously claiming to be a victim of identity theft.

29. While I was going to school under the term of the second option, and while student loans were being collected by Luc Owono and cancelled by the Department of Education, Luc Owono decided to sign up for unemployment benefit with the Department of Labor because he or another person held in debt bondage in Connecticut has stopped working as soon as Luc Owono secured legal permanent status in the U.S. But Luc Owono owed prior unpaid excess unemployment benefit.  When cornered by the Department of Labor, Luc Owono used the alibi that he was the victim of identity theft because he successfully used such alibi with financial institutions (Banks), and the Department of Education, and it worked. But Luc Owono did not foresee that the Department of Labor was different from the Department of Education and Banks that he successfully manipulated through false claim of identity theft.

30. The Department of Labor opened an investigation into Luc's false claim that he was the victim of identity theft and that he was entitled to employment benefit. An administrative

hearing was held in which the Administrative Judge presented Luc with a Fire Guard license containing the name of Luc Ndi Owono, but the picture on the identification was that of plaintiff. The Administrative Judge asked Luc Owono whether he recognized the person in the picture and Luc responded that he did not recognize the person in the picture despite Luc being my direct supervisor in labor trafficking and despite him using his conditional documents to maximize profit.

31. Because Luc Owono falsely claim that he did not know the person in the identification picture that was presented to him, the Department of labor assumed that Luc was the victim of Identity theft. The Department of Labor in collaboration with the Department of justice through the FBI began an investigation. Luc Owono then took necessary step to frame me and to prove that he was the victim of identity theft. The FBI held multiple interviews with Luc Owono. As the FBI was inching closer and closer to uncover Luc's tie to the Africa Employment Agency and their illegal activities of sex and labor trafficking, Luc Owono decided to take the investigation into his own hands. Luc owono Knew that if he were to allow the FBI interview me during its investigation, I was going to reveal everything.

32. Rather than letting the FBI do its job, Luc Owono decided to do the investigation himself. Because he enrolled me to college and he knew exactly where to go, Luc Owono went to The City College of New York where he enrolled me. At The City College of New York, Luc Owono asked the employees at the ID's office to give him a copy of a school ID of his employee (referring to me). The employees at the ID's office directed Luc Owono to have me come with him at the office if he needed a copy of school ID of his employee for whatever reason. Luc Owono left the ID's office only to come back few minutes later and changed his story. This time, he lied to the employees at the ID's office and told them that he, "Luc Ndi Owono" was a student at The City College of New York. Luc told the employees at the ID's office that he lost his school ID and that he wanted another school ID card. Luc was asked to pay $10.00 for "he" ID's replacement. Luc Owono paid the $10.00 and fraudulently received a school identification card knowing that such school identification card was not his school ID.

33. At the same time, Luc Owono also told the FBI agent during one of the interviews that CUNY did not give him documents and that they only showed him a photo of the student identification and he recognized the person who appeared to be Andre Ngono. "Although CUNY would not give OWONO any documents they did show him a photo of the student identification. OWONO recognized the individual in the identification. OWONO Stated that the photo appeared to be ANDRE NGONO. (FBI report dated 09/05/2014).

34. The employees at the ID's office issued a replacement card to Luc Owono. During the process, an employee at the ID office noticed that the photograph on the school ID card did not look like Luc Owono who was standing in front of the employee. The employee told luc Owono that the photo did not look like him. The employee further asked him if he wanted to change the photo on the school ID card. He refused to change the Photo on the card and told the employee that it was him on the school ID card and that he did not need to change it. He took the school ID and left without even informing Plaintiff that he came to school to fraudulently obtain a college ID.

35. Luc Owono intentionally manipulate the Federal investigators and directed the investigation toward the false claim of identity theft and away from the criminal activities being done on his own behalf and on the behalf AEA. At the time of the investigation, Luc Owono Owned many companies that included a Transportation company, a Real Estate company, a Travel Agency Company, a film producing company, a music studio production, and many other companies not listed here. It was going to be obvious for any Federal investigator to see that the owner of so many active companies was obtaining unemployment benefit while none of these companies has declared bankrupty.  Though Luc Owono was the owner of all these active companies, it was AEA who had control of these shell companies, Because AEA made it clear at the beginning that it will use the fraudulently obtained conditional green cards and social security of its members in the U.S. to open shell companies just to facilitate money laundering. Thus, Luc Owono was rich theoretically and poor practically due to the complex and underground nature of the criminal activities of AEA and its associates. So, he owned all these companies but still

needed unemployment benefit from the department of labor in addition to the student loan he received.

36. Luc Owono succeeded in manipulating Federal investigators, and because I was performing the labor trafficking under the name of my master or his representative, it appears on the surface to the investigators that I stole the identity of my master, or that of his representative. Because I was still going to school, Luc Owono told the Department of Labor's Investigator that he knew what school I was attending. The Department of Labor's investigator in coordination with the city college of New York relayed the information to the FBI. On March 7, 2016, I was arrested at The City College of New York, and I was placed in Federal detention without bail.

37. while held in debt bondage, peonage, and slavery, AEA and its New York's agents promised to protect me so long as I followed their directives. I followed AEA's directives to the end in hope of protections that were never there. After I was arrested on March 7, 2016, the court assigned me a public defender in the name of Martin Cohen. During one of his visits, Mr. Cohen asked me if I had someone to bail me out. I told Mr. Cohen that Luc Ndi owono could bail me out. It is only then that Mr. Cohen informed me that Luc Ndi Owono could not bail me out because he was the person who reported to Federal Agents that I stole his identification to work and to go to school. I was and surprised and shock-shelled by Luc's action.

38. When I was brought to America to work for AEA, the associates for AEA in Africa allowed me to travel with my then 7 years old daughter. Shortly after my daughter and I arrived in New York, Kamara Youssouf and Luc Owono asked me to let them sell my infant child as sex slave to one of their pedophile rich client in New York City. Luc Owono and Kamara Youssouf told me that their client agreed to pay $350,000.00 for my minor and underage infant girl. Luc Owono and Kamara Youssouf said to me that my part of the sale of my 7 years old daughter was $100,000.00 and they were to give me $50,000.00 and the other $50,000.00 were to instantaneously liquidate my debt bondage of $50,000.00. But the sale of my daughter as sex slave was never brought to my attention in Africa, nor was the selling of my child part of my debt

bondage. So, I refused to allow them to sell my child to their pedophile customer. It is only then that I understood that AEA's and its New York's agents thought that I would agree to sell my child to sex trafficking due to my poverty. But they learned that I was not that type of a poor person who would do anything for money.

39. From the time I refused to allow the traffickers sell my child, Luc Owono and Kamara Youssouf began to threaten me with abuse of legal process. They said that they were going to report me to ICE and get me deported back to Africa because I stood in the way of a $350,000.00 sale for a deal that was already made. Their threats caused me to believe that if I did not work or continue to work for AEA and pay off my $50,000.00 debt bondage while in the United States, they, the Traffickers were going to go after me or my daughter, or that they were going to immediately report me to ICE and get me deported back to Africa. So, I remained in my condition of debt bondage, peonage, slavery, and involuntary servitude with the intent to prevent my daughter from serious harm since I knew that they wanted to made money with my labor. I remained in such condition to avoid getting arrested. If I were arrested by ICE and deported back to Africa, my daughter was to be left alone with Luc Owono and Kamara Youssouf, and they would have sold my daughter as sex slave to their pedophile client in New York in my absence.

### VI.     FEDERAL CAUSE OF ACTION

#### (a)  Severe Form of Trafficking in Person

40. Paragraph 1 through 39 above are incorporated as if fully set forth herein.

#### (A) Labor Trafficking

41. Federal and New York state laws prohibit the unlawful act of labor trafficking. In December 2006 and up to November 2020, the defendants did obtain my labor by the use of

fraud and coercion for the purpose of subjecting me the Plaintiff to involuntary servitude, peonage, debt bondage and slavery.

    (B)  Sex Trafficking

42. Federal and New York State Laws prohibit the act of sex trafficking. on or about 2007 the Defendants Luc Owono and Kamara Youssouf conspired to commit sex trafficking against a minor. The Defendants further attempted to sell an underage girl to sex trafficking in which a commercial sex act was to be induced by force, fraud, and coercion in which the person forced or induced to perform such act has not attained 18 years of age.

43. By committing the act of severe form of trafficking as set forth in subsection A and B above, the Defendants violated the law. By violating the law, the Defendants have, under color of Federal and state statutes, Regulation, Ordinances, Customs or Usage deprived plaintiff of rights secured and guaranteed by law. Thus, entitle Plaintiff to remedy.

### (b)  Abuse of Legal Process and Threats of abuse of Legal Process.

44.   Paragraph 40 through 43 above are incorporated as if fully set forth herein.

45. Federal and State laws prohibit the threat of, and abuse of legal process. From December 8, 2006 to June 28, 2021, the Defendants threatened plaintiff with deportation due to plaintiff immigration status. Furthermore, the Defendants threatened to, and did abuse of legal process by providing false and fictitious information to Federal Agents, knowing such information to be false. Moreover, the Defendants did cause the abuse legal process with clear intent to cause serious harm to Plaintiff.

46.   on or about March 7, 2016 and up to November 19, 2020, the Defendants did cause regularly issued criminal process against the Plaintiff with the intent to harm plaintiff without

excuse and justification. Even though, plaintiff was held in debt bondage, slavery, peonage and involuntary servitude by AEA and its New York's agents.  For example, Luc Owono participate in the investigation and testify at Plaintiff's trial to cause the process to be used in perverted manner just so that he can obtain the collateral objective which was to cancel all government money obtained through false and fictitious claim of being the victim of identity theft. As a direct result of Defendants abuse of Legal process, Plaintiff suffered serious injuries.

47.     Defendant Luc Owono participated in the criminal investigation and falsely reported to Federal and state authority that he was the victim of identity theft, while at the same time he was acting as Plaintiff's direct supervisor in debt bondage, peonage, slavery, and involuntary servitude. Defendant Luc Owono used his own documents to obtain Plaintiff's labor and maximize profit for himself and for AEA. In addition, Luc Owono abused Legal Process by fraudulently obtaining student loan and a College ID card without Plaintiff knowledge. He used the college ID to direct Federal investigation away from AEA's shell companies that were opened by AEA through use of Luc Owono's conditional green card and associated social security number. Also, Luc Owono abused legal process by coercively enrolling Plaintiff to college and by lying to Plaintiff that such college enrollment was for employment purposes, then turned around and told the Department of Education that He was the victim of Identity theft.

48.   The defendants violated the laws that prohibit threat of, and abuse of legal process. By violating the law, the Defendants have, under color of Federal and state Statutes, Regulations, Ordinances, Customs or Usage, deprived Plaintiff of rights secured and guaranteed by law. Thus, entitle Plaintiff to remedy.

## VII.  NEW YORK STATE TORT, CONSTITUTIONAL AND COMMON LAW TORT

### A. Cause of Action

49. Paragraph 1 through 48 above are incorporated as if fully set forth herein.

### (a) Constitutional Rights Violation

50. Article 1. Section 1 of the New York State Constitution guarantees that no person in New York State will be disfranchised, nor can any person be deprived of any right secured to any citizen of the state of New York.

51. From about December 2006 to November 2020, the Defendants deprived Plaintiff of rights to be free from slavery, debt bondage, peonage involuntary servitude and or injuries thereof. By depriving Plaintiff of such rights, the Defendants have violated New York state constitution and so entitle Plaintiff to remedy.

### (b) Conspiracy

52. From about December 2006 to November 2020, the Defendants subjected Plaintiff to severe form of trafficking in person Through corrupt agreement between them and committed overt acts in furtherance of their agreement through their intentional participation. As a result of the overt acts, the defendanst severely injured plaintiff.

53. The Defendants conspired to injure Plaintiff and caused serious damage to Plaintiff. By conspiring to injure Plaintiff through the acts of severe form of trafficking in person, the Defendants violated the law. Thus, entitle Plaintiff to remedy.

### (c) Deceit

54. From about December 2006 to November 2020, the Defendants held Plaintiff in debt bondage, slavery, peonage and involuntary servitude through fraud, coercion and false affirmation made to Plaintiff with Knowledge and intent to defraud Plaintiff. As a direct result of the Defendants deceit, Plaintiff sustained serious injuries and damages.

55. By committing the tortious acts of deceit against plaintiff, the defendants violated the law and so become liable for their wrongful acts and entitle Plaintiff to remedy.

### (d) Emotional Distress and Mental Anguish Intentionally Inflicted

56. From about December 2006 to November 2020, the Defendants intentionally inflicted emotional distress and mental anguish to plaintiff through the above narrated wrongful acts that are extreme and outrageous. The wrongful acts done to plaintiff by the Defendants were intended to and did cause severe emotional distress and mental anguish to Plaintiff. As direct result of Defendants' Tortious acts, plaintiff suffered serious emotional distress and mental anguish.

57. By intentionally inflicting severe emotional distress and mental anguish to Plaintiff, the Defendants have violated the law and so entitle Plaintiff to remedy.

## VIII.   RELIEF SOUGHT.

58. Paragraphs 1 through 57 above are incorporated as if fully set forth herein.

59. Plaintiff in this complaint seeks to be reimbursed for all Court fines and restitutions imposed upon plaintiff during the made perverted criminal processes that were intentionally manipulated by Luc Owono. Plaintiff further seek to be reimbursed for all costs incurred in the instant civil action. Moreover, Plaintiff seeks to be reimbursed for all and any sum in excess to $50,000.00 debt bondage, peonage, slavery, and involuntary servitude that plaintiff has been subjected to, by the Defendants.

60. In addition, Plaintiff seeks money damages for all other injuries sustained by plaintiff during the act of severe form of trafficking in person that include lost wage and loss of earning capacity due to disability related to the acts of severe form of trafficking in person, pain and suffering, Loss of enjoyment of life and any other damage for injury whether known or unknown.

## IX.     CONCLUSION

61. As we have seen in paragraph 1 through 60 above, the Defendants subjected Plaintiff to severe form of trafficking in person. The Defendants further subjected Plaintiff to threat of, and abuse of legal process, in addition to all other Defendants' tortious acts against Plaintiff. Through their unlawful acts, the defendants inflicted serious pain and suffering to Plaintiff. Therefore, the Defendants should be held to account for their unlawful acts for damages in the amount of money that the Jury may deem just and necessary.

Respectfully submitted,

Date: 06/28/2021.

　　　　　　　　　　/S/ Andre Marie Ngono

　　　　　　　　　Andre Marie Ngono

　　　　　　　　　Pro se Plaintiff

　　　　　　　　　132-10 South Conduit Avenue

　　　　　　　　　Jamaica, New York 11430.