UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDRE MARIE NGONO,

              Plaintiff,

- against -

LUC OWONO, KAMARA YOUSSOUF, AFRICA EMPLOYMENT AGENCY, LUCKENDY REALTY, TRAVSAIL AGENCY, INC., ACCESS TRANSPORTATION SERVICES, INC., and SABLE HUB, INC.,

              Defendants.

**ORDER**

21 Civ. 95 (PGG) (SN)

---

PAUL G. GARDEPHE, U.S.D.J.:

      Pro se Plaintiff Andre Marie Ngono brings this action against Defendants Luc Owono, Kamara Youssouf, Africa Employment Agency ("AEA"), Luckendy Realty, Travsail Agency, Inc., Sable Hub Inc., and Access Transportation Services Inc. (Second Amended Complaint ("SAC") (Dkt. No. 38) ¶¶ 3-10) Ngono alleges that Defendants subjected him to labor trafficking and that Defendants "attempted to subject [his] then 7 year[] old daughter to sex trafficking." (Id. ¶ 3)

      Defendants Owono, Luckendy Realty, Travsail Agency, Inc., Access Transportation Services, Inc., and Sable Hub, Inc. (the "Owono Defendants") have moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). This Court referred the motion to Magistrate Judge Sarah Netburn for a Report and Recommendation ("R&R").

      Judge Netburn concludes that – construed liberally – the SAC asserts labor and sex trafficking under the Trafficking Victims Protection Act (the "TVPA") and N.Y. Soc. Serv. Law § 483-bb(c)(i); abuse of process; violation of Ngono's rights under Article I, Section 1 of

the New York State Constitution; conspiracy; fraud; and intentional infliction of emotional distress ("IIED"). (R&R (Dkt. No. 65) at 1-2)[1] In her R&R, Judge Netburn recommends that (1) the Owono Defendants' motion to dismiss be granted; (2) Plaintiff's claims against Defendants Youssouf and AEA be dismissed by this Court sua sponte pursuant to Fed. R. Civ. P. 4(m); and (3) that leave to amend be denied. (See R&R (Dkt. No. 65)) Plaintiff objects to the R&R to the extent that Judge Netburn recommends that his claims against the Owono Defendants be dismissed. (Pltf. Obj. (Dkt. No. 66))

For the reasons stated below, Plaintiff's objections will be overruled, and the R&R adopted to the extent that Plaintiff's federal claims will be dismissed without leave to amend. This Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## BACKGROUND

I.  **FACTS**[2]

The SAC alleges that Plaintiff was "recruited in Gabon by" AEA and its associates, who transported Ngono to New York to work for AEA and the Defendants in December 2006. (SAC (Dkt. No. 38) ¶ 13) According to Ngono, in exchange for being transported to the United States, he agreed to work for AEA for five years to repay a $50,000 "debt bondage" reflecting the cost of his U.S. visa, travel expenses, "fees, protection in the

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.
[2] Because the parties have not objected to Judge Netburn's factual summary, this Court adopts her account of the alleged facts in full. See Silverman v. 3D Total Solutions, Inc., 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

United States" by AEA, and shelter in New York. (Id. ¶ 15) Defendants also promised to assist Ngono in obtaining his green card through "a fraudulent marriage with a U.S. [c]itizen." (Id. ¶ 16)

When Ngono and his then seven-year-old daughter arrived at JFK International Airport on December 7, 2006, they were met by Defendant Youssouf, an alleged agent of AEA. (Id. ¶ 17) Youssouf transported Ngono to a Bronx residence and placed him "under [the] direct supervision of Luc Owono." (Id. ¶¶ 17-18) At Owono's request, Ngono surrendered his passport to Owono. (Id. ¶ 19) Shortly after his arrival, Defendants Owono and Youssouf "asked [Ngono] to let them sell [his] infant child as a sex slave" in exchange for the immediate discharge of Ngono's $50,000 debt. (Id. ¶ 38) After Ngono refused the offer, Owono explained that Ngono would be required to work under Owono's name, and that all money Ngono earned would be "deposited in . . . Owono's bank account before being transferred to AEA." (See id. ¶¶ 19, 38) Over the next five years, Plaintiff earned more than $72,000 while working under Owono's identity. (Id. ¶ 21)

After Ngono's $50,000 "debt bondage was liquidated" over the five-year period, Owono "offered [Ngono] two options": Ngono could continue working under Owono's identity and keep 20% of the money he earned, or he could attend City College, again under Owono's identity. (Id. ¶¶ 27, 32) If Ngono graduated from college, he would be made a "general manager in . . . AEA's [t]rafficking company," Defendant Travsail Agency, Inc. (Id. ¶ 27) Ngono chose the second option, which he describes as Owono's scheme to commit student loan fraud. (Id. ¶¶ 27-28)

Ngono alleges that while Owono was collecting the student loan proceeds, he falsely told the Department of Education that "some unknown person was going to school and

3

taking loans [] using his [identity]." (Id. ¶ 28) Owono also fraudulently obtained unemployment benefits from the Department of Labor. (See id. ¶ 29) Owono was pursued by the Department of Labor for "excess unemployment benefit[s]," however. Id. Once "cornered by the Department of Labor," Owono falsely told the Department of Labor and the FBI that he was the victim of identity theft. (Id. ¶¶ 29-30) To cover up Owono and AEA's "illegal activities of sex and labor trafficking," Owono steered federal agencies and investigators to Ngono, framing him for identity theft. (Id. ¶¶ 31-36) Owono's efforts to frame Ngono culminated with Ngono's arrest on March 7, 2016. (Id. ¶ 36) Ngono later learned from his lawyer that it was Owono who had reported to federal investigators that Ngono had stolen Owono's identity. (Id. ¶ 37)

Ngono alleges that after he "refused to allow the traffickers to sell [his] child, Luc Owono and Kamara Youssouf began to threaten [Ngono] with abuse of legal process," in that they would report Ngono to immigration authorities and have him "deported back to Africa." (Id. ¶ 39) Because of Ngono's fear that he would be deported, and that his daughter would be harmed, Ngono continued working for the Defendants under Owono's name. (Id.)

Ngono was charged in this District with theft of government funds, in violation of 18 U.S.C. § 641; wire fraud, in violation of 18 U.S.C. § 1343; student financial aid fraud, in violation of 20 U.S.C. § 1097; immigration fraud, in violation of 18 U.S.C. § 1546(a); and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and (b). (16 CR. 367, Indictment (Dkt. No. 12) ¶¶ 1-6) All of the charges against Ngono arose from his theft of Owono's identity and his use of Owono's identity to fraudulently obtain state and federal benefits. United States v. Ngono, No. 16 CR. 367 (PAC), 2021 WL 2850626, at *1 (S.D.N.Y. July 8, 2021)

At trial, Ngono testified that "his name was 'Luc Ndi,' and that he was given the name 'Andre Ngono' by an international criminal slave trade organization which brought him to the United States and provided him with free housing and education in exchange for five years of his salary." United States v. Ngono, 801 F. App'x 19, 21 (2d Cir. 2020) (summary order).

On May 4, 2017, a jury found Ngono guilty on all charges, and on September 19, 2017, Judge Crotty sentenced Ngono to 48 months' imprisonment. (16 CR. 367, Sent. Tr. (Dkt. No. 91) at 1, 2, 43) The Second Circuit affirmed the judgment of conviction on February 3, 2020. Ngono, 801 F. App'x at 26.

## II.    PROCEDURAL HISTORY

The Complaint was filed on January 5, 2021. (Dkt. No. 2) On March 1, 2022, this Court referred this case to Judge Netburn for general pretrial supervision. (Dkt. No. 6) The Second Amended Complaint was filed on June 28, 2021. (SAC (Dkt. No. 38))

### A.    Service

On July 7, 2021, Judge Netburn issued an order of service directing Ngono to complete a "USM-285 form" for each defendant so that the U.S. Marshals Service could effect service. (Order of Service (Dkt. No. 40) at 1) The Service Order provides that if, "within thirty days, Plaintiff has not returned the USM-285 forms or requested summonses, under Rule 41(b) of the Federal Rules of Civil Procedure, the Court may dismiss this action as to those defendants." (Id.) In a November 5, 2021 order, Judge Netburn notes that while summonses had been issued as to all Defendants, Plaintiff had listed Owono's address as the address for Defendants Youssouf and AEA. (Nov. 5, 2021 Order (Dkt. No. 44)) In a February 28, 2022 order, Judge Netburn further notes that counsel for the Owono Defendants had accepted service for all of the Owono Defendants, but not on behalf of Youssouf and AEA. (Feb. 28, 2022 Order

(Dkt. No. 59) at 2) And because Ngono had not provided the Marshals Service with addresses for Defendants AEA and Youssouf, the Marshals had not been able to serve these Defendants. Judge Netburn reminded Ngono that "failure to serve Defendants Kamara Youssouf and [AEA] could result in a dismissal of the claims against them." (Id.) To date, Ngono has not properly served Youssouf and AEA, and neither has appeared in this action.

### B. The Owono Defendants' Motion to Dismiss and Judge Netburn's R&R

The Owono Defendants moved to dismiss the SAC on February 28, 2022, and this Court referred their motion to Judge Netburn for an R&R. (Mot. (Dkt. No. 57); March 1, 2022 Order (Dkt. No. 61); see also Feb. 28, 2022 Order (Dkt. No. 59) at 2 (noting that the motion was initially filed only on behalf of Owono, but that – at counsel's request – Judge Netburn deemed the motion filed on behalf of all the Owono Defendants)) Plaintiff filed his opposition on April 4, 2022 (Pltf. Opp. (Dkt. No. 62)), and the Owono Defendants filed a reply on April 19, 2022. (Def. Reply (Dkt. No. 64))

On August 22, 2022, Judge Netburn issued a 12-page R&R recommending that the motion to dismiss be granted without leave to amend, and that the claims against Defendants Youssouf and AEA be dismissed sua sponte pursuant to Fed. R. Civ. P. 4(m). (R&R (Dkt. No. 65) at 10-12)

As to Ngono's TVPA claims, Judge Netburn recommends that they be dismissed as time-barred under the statute's ten-year statute of limitations, because Ngono filed this action on January 5, 2021, but alleges that he was brought to the United States "'shortly after' December 2006." (Id. at 6)

Judge Netburn also recommends that Ngono's state law claims be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Id. at (6-10))

6

As to Defendants Youssouf and AEA, Judge Netburn notes that she twice warned Ngono that a failure to serve them could result in dismissal of his claims against them. (Id. at 10-11 (citing Dkt. Nos. 43, 44, 59)) Judge Netburn recommends dismissing Ngono's claims against Youssouf and AEA pursuant to Fed. R. Civ. P. 4(m). (Id. at 11)

Finally, Judge Netburn recommends that leave to amend the SAC be denied, because the "only cognizable federal cause of action Plaintiff's complaint may raise [under the TVPA] is time-barred," making amendment futile. (Id.) Judge Netburn also notes that "Plaintiff and all Defendants who have been served are residents of New York," and that accordingly this Court would not have diversity jurisdiction over the parties if Plaintiff were granted leave to amend his state law claims. (Id.)

B.  **Plaintiff's Objections**

Ngono filed objections to the R&R on August 31, 2022. (Pltf. Obj. (Dkt. No. 66)) Ngono objects to Judge Netburn's finding that his TVPA claims are time-barred, arguing that (1) the Defendants trafficked him a second time in 2011, after his original $50,000 five-year "contract with AEA neared [its] end"; and (2) the Owono Defendants should not benefit from the TVPA's statute of limitations. (Id at 4-5) Ngono also objects to Judge Netburn's finding that the SAC fails to state a claim under New York law. Ngono does not object to Judge Netburn's recommendation that his claims against Defendants AEA and Youssouf be dismissed. (See generally id.)

The Owono Defendants contend that the R&R should be adopted in its entirety. (Def. Opp. (Dkt. No. 67) at 3)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008)

8

(citing Pearson-Fraser v. Bell Atl., 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition.") (quotation marks and citations omitted).

### B.   Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even where a plaintiff is proceeding pro se. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

## II.    ANALYSIS

### A.    Whether Ngono's TVPA Claims Are Time-Barred

Judge Netburn recommends that Ngono's TVPA claims be dismissed as time-barred. Accepting Ngono's allegations as true, "these claims arose during or 'shortly after' December 2006 – well over ten years" before the Complaint was filed in January 2021. (Id. at 6) Moreover, "Plaintiff has pleaded no circumstances . . . that would have prevented him from timely filing his claim," and therefore equitable tolling is not applicable. (Id. at 5-6)

In his objections, Ngono asserts that Judge Netburn "misinterpreted [his] account of the events," and that while the "first act of labor trafficking . . . arose in December 2006," a "completely independent" "second scheme" of trafficking occurred "around September 2011 as

10

[Ngono's] contract with AEA neared the end." Ngono contends that this alleged second scheme of trafficking is not time-barred. (Pltf. Obj. (Dkt. No. 66) at 3-5)

Ngono also contends that the Owono Defendants cannot assert the ten-year statute of limitations because they refused to accept service on behalf of AEA and Youssouf. (Id. at 5)

1.   **Statutory Provisions**

18 U.S.C. § 1595(a) provides a private right of action to "an[y] individual who is a victim of a violation of [the TVPA]." See 18 U.S.C. § 1595(a). The TVPA bars (1) forced labor violations under 18 U.S.C. § 1589; and (2) "trafficking" with respect to forced labor under 18 U.S.C. § 1590.

18 U.S.C. § 1589 provides as follows:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means –

   (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

   (2) by means of serious harm or threats of serious harm to that person or another person;

   (3) by means of the abuse or threatened abuse of law or legal process; or

   (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be [guilty of a crime].

18 U.S.C. § 1589(a).

"Section 1589 was intended to broaden the punishable conduct under the [TVPA] beyond [what] constitutes involuntary servitude." Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc., 2021 WL 7186030, at *6 (E.D.N.Y. Apr. 30, 2021) (citing Walia v. Veritas Healthcare

11

Sols., L.L.C., 2015 WL 4743542, at *4 (S.D.N.Y. Aug. 11, 2015)). "[T]he fundamental purpose of § 1589 is to reach cases of servitude achieved through nonviolent coercion – namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process." Paguirigan v. Prompt Nursing Emp. Agency LLC, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (citing 18 U.S.C. § 1589(a); Franco v. Diaz, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014)).

18 U.S.C. § 1590(a) makes it unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a). "[I]f a defendant violates section 1589, he also violates section 1590 if he recruited the person to perform forced labor." Adia v. Grandeur Mgmt., Inc., 933 F.3d 89, 94 (2d Cir. 2019).

2.  **Ngono's "Second Scheme" Argument**

The SAC alleges that at "the end of the first five years of [Ngono's] debt bondage" – i.e., in 2011 – Owono "designed the next scheme to further subject [Ngono] to . . . trafficking." . (SAC (Dkt. No. 38) ¶¶ 21, 27)  Owono offered Ngono "two options": (1) continue working under Owono's identity in exchange for 20% of the money he earned; or (2) attend college under Owono's identity in exchange for a position as "a general manager in one of the [Defendants'] [t]rafficking compan[ies]," Defendant Travsail Agency, Inc. (Id. ¶ 27) Ngono "took the second option" and used Owono's identity to attend City College. (Id. ¶ 28) The SAC alleges that – unbeknownst to Ngono – Owono's "true intention . . . [was] to obtain money from the Department of Education" through student loan fraud. (Id.) Owono falsely told "the Department of Education that some unknown person was going to school and taking [out] loans by using [Owono's] personal identification." (Id. ¶ 29) As a result, the Department of Education "cancel[led] the student loans." (Id.)

In his objections to the R&R, Ngono contends that Judge Netburn "misinterpreted [his] account of the events" and that the student loan fraud scheme constitutes an independent TVPA violation. (See Pltf. Obj. (Dkt. No. 66) at 3-5; SAC (Dkt. No. 38) ¶ 27) Ngono does not explain how the student loan fraud scheme violates the TVPA, but merely contends that this scheme allowed the Owono Defendants "to obtain ten[s] of thousands [of dollars] in student loans, which financially benefited [Owono's] corporations . . . [and] helped [O]wono pay off the debt he incurred during his fraudulent marriage with a United States Citizen." (Pltf. Obj. (Dkt. No. 66) at 8) Ngono's allegations concerning the student loan fraud scheme do not state a claim for forced labor or trafficking, however.

The SAC does not plead facts demonstrating that Ngono was "coerced" into participating in the student loan fraud scheme. The SAC does not allege that Defendants threatened him with physical violence or restraint, or any other form of "serious harm" when they proposed that he participate in this scheme.

The SAC does allege that "from the time [Ngono] refused to allow [Owono and Youssouf to] . . . sell [his] child" into sexual slavery, shortly after he arrived in December 2006, they "began to threaten" Ngono that – unless he worked under Owono's identity and gave his earnings to Owono – "they were going to report [him] to [immigration officials] and get him deported back to Africa." (SAC (Dkt. No. 38) ¶¶ 38, 39) While such a threat violates 18 U.S.C. 1589(a)(3), see Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013) ("The threat of deportation alone may support a claim for forced labor."), the SAC does not allege that any such threat was made in connection with efforts to induce Ngono to participate in the student loan fraud scheme. To the extent that Ngono pleads generally that Owono and Youssouf made these threats from "December 8, 2006[,] to June 28, 2021" (SAC (Dkt. No. 38) ¶

13

45) – i.e., from the day he arrived in the United States to the day the SAC was filed – his allegations are not insufficient to "to state a claim to relief that is plausible on its face." See Twombly, 550 U.S. at 570.

After Ngono's "$50,000.00 debt bondage was liquidated" in or about 2011, Owono "offered [Ngono the] two options." (SAC (Dkt. No. 38) ¶ 27)  According to the SAC, Ngono's decision to attend City College in Owono's name was motivated not by threats or coercion but by Owono's promise that if Ngono "were to take the second option, [Owono would] appoint [Ngono] as a general manager in one of AEA's [t]rafficking compan[ies]," Defendant Travsail Agency, Inc. (Id.)  In sum, the SAC does not plausibly allege an independent trafficking violation based on the Owono Defendants' 2011 conduct, because it does not allege that Ngono was coerced or otherwise threatened into attending college in Owono's name.

Because the SAC does not plausibly allege an independent TVPA forced labor violation under 18 U.S.C. § 1589 based on the Owono Defendants' 2011 conduct, it also does not plausibly allege a "trafficking" forced labor claim under 18 U.S.C. § 1590.  Adia, 933 F.3d 89, 94.  In any event, the Owono Defendants' 2006 conduct – bringing Ngono to the U.S. and forcing him to pay off the $50,000 debt (SAC (Dkt. No. 38) ¶¶ 17, 18, 21) – is unrelated to the 2011 student loan fraud scheme, which allegedly arose out of Owono's need to pay his own debts.  (Id. ¶ 27)

Ngono contends, however, that Owono financially benefitted from Ngono attending college in Owono's name. (Pltf. Obj. (Dkt. No. 66) at 8)  While the TVPA makes liable "[w]however knowingly benefits, financially, or by receiving anything of value, from participation in a venture which has engaged in any act in violation of the [TVPA]," 18 U.S.C.

14

§ 1593A, liability does not attach absent a violation of the TVPA, and the SAC's allegations do not make out a TVPA violation premised on 2011 conduct.

In sum, Ngono's objection that Judge Netburn "misconstrued" the SAC as asserting only a single TVPA claim is overruled. Even assuming arguendo that the 2011 student loan fraud scheme constitutes a second and distinct scheme, it does not restart the clock for purposes of the ten-year limitations period applicable to TVPA violations, because the SAC does not plead facts sufficient to demonstrate that the alleged 2011 conduct constitutes a TVPA violation.[3]

### 3. Whether the Owono Defendants' Refusal to Accept Service on Behalf of AEA and Youssouf Affects Application of the Statute of Limitations

The SAC alleges that Defendants "recruited [Ngono] in Africa under [] term[s] that [Ngono] was to come to the United States of America to work for [Defendant AEA] . . . for five years in order to liquidate [his] debt bondage of $50,000.00," and that this conduct violates the TVPA. (SAC (Dkt. No. 38) ¶ 15) The SAC further asserts that the Owono Defendants were involved in this alleged illegal scheme from the outset. Indeed, the SAC alleges that immediately after Ngono's arrival in the United States, Youssouf "placed [Ngono] under [the] direct supervision of Luc Owono . . . [who] requested that [Ngono] turn [his] passport over to

---

[3] Ngono repeats his "second scheme" assertion in a variety of contexts. (See, e.g., Pltf. Obj. (Dkt. No. 66) at 5 ("Moreover, the District Judge should not grant the motion to dismiss [the SAC] . . . with respect to Defendants Luckendy Realty, Travsail Agency, Inc., Access Transportation Services, Inc., and Sable Hub, Inc. because these corporate Defendants aided and abetted in subjecting plaintiff to labor trafficking beginning in 2011."); id. at 6 ("What is relevant to plaintiff's claim is the material fact[] that Defendant Owono designed a second independent scheme in 2011[] to subject plaintiff to labor trafficking."); id. at 7 ("Defendant Owono independently subjected plaintiff to labor trafficking starting from 2011.")) None of these objections is persuasive, because Ngono has not plausibly alleged that the 2011 conduct amounts to an independent violation of the TVPA.

[Owono] . . . and explained to [Ngono] that their practices of slave labor require the laborer to [work] under the name of the laborer's owner," which in this case was Owono. (Id. ¶¶ 17-19)

Judge Netburn finds that "[t]he statute of limitations for claims under the TVPA is ten years after the cause of action arises," and she concludes that Ngono's TVPA claims are time-barred (R&R (Dkt. No. 65) at 5-6 (citing 18 U.S.C. § 1595(c)(1)):

> [Ngono's] claims arose during or "shortly after" December 2006 – well over ten years from the time of the filing of this suit in January 2021 – and Plaintiff has pleaded no circumstances, extraordinary or otherwise, that would have prevented him from timely filing his claim. Therefore, Plaintiff's federal labor and sex trafficking claims are time-barred by the TVPA's statute of limitations.

(Id. at 6)

In his objections, however, Ngono argues that the "Owono [Defendants] . . . cannot now claim the benefits of legal protection that the 10 year[] statute of limitation[s] under 18 U.S.C. § 1595(c) provides to Defendant[s] [AEA and Youssouf]." (Pltf. Obj. (Dkt. No. 66) at 5) According to Ngono, the Owono Defendants cannot properly assert their statute of limitations defense because they "refused to accept service" on behalf of AEA and Youssouf. (Id.) But the Owono Defendants' refusal to accept service on behalf of AEA and Youssouf is a matter entirely unrelated to whether Ngono's claims against the Owono Defendants are time-barred. As Judge Netburn explains, Ngono's TVPA claims against the Owono Defendants are time-barred because they "arose during or 'shortly after' December 2006 – well over ten years from the time of the filing of this suit in January 2021." (R&R (Dkt. No. 65) at 5-6)

This Court finds no error in Judge Netburn's conclusion that Ngono's TVPA claims against the Owono Defendants arose during or shortly after December 2006 and are thus time-barred. The Owono Defendants' motion to dismiss Ngono's TVPA claims will be granted.

### B. Whether Ngono's Claims Against Youssouf and AEA Are Properly Dismissed under Rule 4(m)

No party has objected to the R&R's recommendation that Plaintiff's claims against Defendants Youssouf and AEA be dismissed by this Court sua sponte pursuant to Fed. R. Civ. P. 4(m). This recommendation will therefore be reviewed solely for clear error. See Gilmore, 2011 WL 611826, at *1.

Rule 4(m) provides that if "a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). As noted above, Ngono did not provide the U.S. Marshals Service with addresses for Defendants Youssouf or AEA, neither of whom have appeared in this action. (See Nov. 5, 2021 Order (Dkt. No. 44)) In recommending dismissal, Judge Netburn notes that she "made clear to Plaintiff that failure to serve [Youssouf and AEA] could result in a dismissal of the claims against them," as required under Rule 4(m). (R&R (Dkt. No. 65) at 11 (citing Feb. 28, 2022 Order (Dkt. No. 59) at 2)) To date, those Defendants have not been served, nor have they entered an appearance.

This Court finds no error in Judge Netburn's recommendation. Accordingly, this Court adopts the R&R's recommendation that Ngono's claims against Defendants Youssouf and AEA be dismissed pursuant to Rule 4(m).

### C. Whether Supplemental Jurisdiction Should Be Exercised Over Plaintiff's State Law Claims

The SAC asserts that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, based on Ngono's TVPA claims. (See SAC (Dkt. No. 38) ¶ 11) For the reasons discussed above, Ngono's TVPA claims will be dismissed as time-barred.

"'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Sefovic v. Mem'l Sloan Kettering Cancer Ctr., 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  There is no reason to vary from this rule here.  Accordingly, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.

**D.     Leave to Amend**

Judge Netburn recommends that leave to amend be denied, because Plaintiff's "only cognizable federal cause of action . . . is time-barred," making amendment as to that claim futile. (R&R (Dkt. No. 65) at 11)

No party has objected to the R&R's recommendation that Ngono be denied leave to amend his TVPA claims.  The Court therefore reviews that recommendation for clear error. See Gilmore, 2011 WL 611826, at *1.

In recommending that this Court deny leave to amend, Judge Netburn notes that "Rule 15(a)(2) requires that leave to amend be freely given when justice so requires. (R&R (Dkt. No. 65) at 11 (citing Fed. R. Civ. P. 15(a)(2)))  Judge Netburn also observes, however, that "'in determining whether leave to amend should be granted, the district court has discretion to consider, inter alia, the apparent futility of amendment.  Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations.'"  (Id. (quoting Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000)))  Judge Netburn concludes that, because Plaintiff's "only cognizable federal cause of action . . . is time-

barred by the TVPA's ten-year statute of limitations," granting Plaintiff leave to amend would be futile. (Id.)

This Court finds no clear error in Judge Netburn's recommendation. Accordingly, the Court adopts the R&R's recommendation that leave to amend be denied as to Plaintiff's claims under the TVPA.

## CONCLUSION

For the reasons stated above, the R&R is adopted to the extent that (1) Plaintiff's claims under the TVPA are dismissed as time-barred; (2) Plaintiff's claims against Defendants Youssouf and AEA are dismissed under Rule 4(m); (3) this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims; and (4) Plaintiff is denied leave to amend his TVPA claims.

The Clerk of Court is directed to close this case and mail a copy of this order to Plaintiff.

Dated: New York, New York
       February 24, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge